Filed 3/24/15  P. v. Thompson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NOEL THOMPSON,<br><br>    Defendant and Appellant. | 2d Civil No. B257614<br>(Super. Ct. No. 56-2013-443717-<br>CU-MC-VTA)<br>(Ventura County) |

Defendant Noel Thompson appeals a default judgment entered against him for $6 million after the court denied his motion to vacate a default.  He did not file an answer to the People's complaint in its civil action for injunctive relief and civil penalties. (Bus. & Prof. Code, § 17200 et seq.)  We conclude, among other things, that Thompson has not shown he was entitled to relief from default due to his counsel's surprise, inadvertence, mistake or neglect.  (Code Civ. Proc., § 473, subd. (b).)[1]  We affirm.

### FACTS

The District Attorney filed a complaint for permanent injunction and civil penalties for unfair business practices (Bus. & Prof. Code, § 17200 et seq.) against Thompson.  The People alleged Thompson was "an owner, managing officer and director" of defendants Body Shaping Gyms, Inc. (BSG) and Body Shaping Investments,

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

LLC (BSI), which entered into "health studio services contract[s]" that were misleading to consumers. BSG was alleged to be conducting business under the name "Gold's Gym."

The trial court issued a temporary restraining order and a subsequent preliminary injunction prohibiting the defendants from selling any "health studio services contract that does not comply with Civil Code sections 1812.80 et. seq." and other provisions of state law protecting consumers.

On December 20, 2013, Ron Bamieh, the attorney for Thompson and the other defendants, informed the trial court that BSG "has filed bankruptcy."

The trial court found this unfair business practice action fell within the police power exception to the bankruptcy stay order. It said, "[T]he automatic stay does not prevent this court from proceeding with the litigation of this action."

Thompson filed a demurrer and motion to strike in response to the complaint. The trial court denied the motion to strike and overruled the demurrer. It ordered Thompson to file an answer by February 6, 2014.

On February 4, Bamieh's firm sent an email to the District Attorney's office requesting a 15-day extension of time to answer the complaint. In response, Deputy District Attorney Karen Wold said that defendants had received an earlier extension of time, but they "filed a frivolous demurrer and motion to strike[.]" She also said, "If you are seeking another extension beyond that which we previously granted, you will need to seek approval from the Court."

On February 6, 2014, Bamieh filed an application for an order extending time to serve an answer to the complaint. He claimed he needed additional time to answer because "our firm must make a formal application with the Bankruptcy Court to be appointed BSG's special litigation counsel under 11 USC § 327(e) in order to represent and be compensated for representation in the current action." Bamieh set a hearing date for the motion for an extension for March 14, 2014.

On February 10, 2014, Wold sent an email to Bamieh's firm stating, "As a professional courtesy, we wanted to advise you that we are going to be filing a request to

2

enter default judgment against all three of your clients tomorrow." On the same day, Danielle De Smeth, an associate in Bamieh's firm, responded by email. She asked, "Will you be taking the currently noticed depositions off calendar pending the request to enter default?"

The next day, Wold filed a request to enter a default. The trial court subsequently entered a default judgment finding Thompson and the other defendants "jointly and severally" liable for $5 million in civil penalties and $1 million as restitution.

At the hearing on the motion to extend the time to answer, the trial court stated, "A default was entered on Feb 11, 2014 and the Court currently lacks jurisdiction to hear the motion."

Bamieh filed a motion to set aside and vacate default and to grant defendants leave to defend. In the motion, he said he "was surprised [to] learn *that despite Defendants' application to extend*, [the People] filed a request for default[.]" (Italics added.) In his declaration, he said, "*I failed to timely file Defendants 'Answer to the Complaint* because defendant BSG was in the process of applying with the Bankruptcy Court to have Bamieh & Erickson appointed as special litigation counsel under 11 USC section 327(e) in order to represent BSG and be compensated for representation in the current action." (Italics added.) "I was surprised to learn that Plaintiff filed the request for entry of default because Plaintiff was aware that BSG was in the process of applying with the Bankruptcy Court . . . which is the reason my firm filed Defendants' application for an extension of time[.]"

The trial court denied the motion. Thompson appealed. He is represented by new counsel on appeal.

## DISCUSSION

*Relief for Thompson Because His Attorney Did Not File An Answer*

Thompson contends the default judgment must be vacated. He claims the trial court erred by denying his motion because the default was the result of his attorney's mistake in failing to file an answer to the complaint.

3

Section 473, subdivision (b) provides in relevant part, "[T]he court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, *surprise*, or neglect, vacate any . . . resulting default entered by the clerk against his or her client[.]"  (Italics added.)

The Legislature intended this provision to provide "mandatory" relief for clients whose attorneys' mistakes result in default judgments.  (*Hu v. Fang* (2002) 104 Cal.App.4th 61, 64.)  The goal "'is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citation.]"  (*Ibid.*)  This provision includes relief for "inexcusable" omissions.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 ["The purpose of this provision 'was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys'"].)

Thompson contends the trial court erred by not granting relief because his counsel declared the default occurred because of his surprise that the People would file a default.  He claims his attorney's declaration showed a ground for relief under the statute.

The People contend Thompson's argument is based on the assumption that the trial court believed his counsel's declaration.  They claim he has not shown why the court could not find: 1) that his counsel's claim of surprise was not credible, 2) the reason his counsel did not answer the complaint was not a mistake, but rather a deliberate litigation decision that does not fall within the client relief provision of the statute.

"The court's determination of whether the default was caused by the attorney's mistake, inadvertence, surprise, or neglect is in part a credibility determination. [Citation.]"  (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.)  "'Credibility is an issue for the fact finder . . . we do not reweigh evidence or reassess the credibility of witnesses[.]'"  (*Ibid.*)  "'When . . . 'the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal[.]' [Citation.]'"  (*Ibid.*)

4

In reviewing the record, "'we must draw all reasonable inferences in favor of the judgment.' [Citation.]" (*Carron v. Andrew* (1955) 133 Cal.App.2d 412, 416.) Where a party filing a motion to vacate does not establish the requisite causation element for the ground of relief, the motion is properly denied. (*Cowan v. Krayzman*, *supra*, 196 Cal.App.4th at pp. 915-916.) Although section 473, subdivision (b) is referred to as a mandatory relief provision, the statute also provides that relief is not granted where "the court finds that the default or dismissal *was not in fact caused* by the attorney's mistake, inadvertence, surprise, or neglect." (*State Farm Fire & Casualty Company v. Pietak* (2001) 90 Cal.App.4th 600, 608.)

Here the declaration in support of the motion was based on the claim that counsel was *surprised* the People would seek a default. Surprise is a "'condition or situation in which a party . . . is *unexpectedly* placed to his injury[.]'" (Italics added.) (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.) But the People gave Bamieh's firm a courtesy warning that a default would be entered. De Smeth's email shows the firm received that warning. These facts are uncontradicted. In his declaration, Bamieh did not mention the email warning.

The People contend the trial court found Bamieh's claim of surprise was not credible and that the default was not the result of counsel's mistake or any of the grounds mentioned in section 473, subdivision (b). Instead, they suggest the court found it was the result of a deliberate litigation decision.

In their opposition to the motion to vacate, the People claimed Thompson's "counsel knowingly allowed the defaults to be taken as part and parcel of defendants' strategy of delaying." They said defendants engaged in a pattern of ignoring "court orders," refusing "to participate in discovery" and preventing this case from "being at issue." The People said, "Somehow the defendants have managed to avoid answering the complaint . . . for seven . . . months."

Thompson did not request written fact findings from the trial court. He did not produce a reporter's transcript of the hearing on the motion to vacate. He did not obtain a settled statement or an agreed statement about what occurred at the hearing.

5

Consequently, we do not know what showing or representations the parties made at that hearing or the trial court's oral findings or responses to those claims.

In their opposition to the motion, the People also raised specific challenges to counsel's credibility and the sufficiency of his declaration. They claimed the motion to vacate had to be denied because the declaration submitted with the motion was not signed by Bamieh. Bamieh subsequently submitted a signed declaration after the People had filed their opposition. The People made a number of evidentiary objections to his declaration. On appeal, Thompson does not discuss whether those objections were sustained or if Bamieh's declaration was rejected on procedural grounds, the merits, or on both grounds.

The People claim: 1) Bamieh did not explain how a bankruptcy appointment order was relevant for Thompson because he was not the defendant who filed bankruptcy, 2) Bamieh did not show that anything prevented him from answering for Thompson, and 3) he was representing three defendants, but his declaration did not state facts about Thompson and "did not make a sufficient showing of a claim of fault with regard to appellant." Thompson elected not to file an appellant's reply brief. He consequently did not respond to these issues, nor has he shown why they are not relevant in determining whether counsel's actions fell within section 473, subdivision (b).

Where the parties dispute the facts and disagree about such issues as causation and credibility, appellate review is hampered by the lack of a transcript and the absence of a record of the trial court's findings. Appellant has a duty to present a complete record on appeal. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent[.]'" (*Ibid.*)

Because of the incomplete record here, Thompson is not in a position to challenge the People's claims about the court's fact findings and credibility determinations. We may not presume error based on an incomplete record. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.)

6

The judgment is affirmed.  Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.



                              GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.



7

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura
_____

Law Office of Brian Nomi, Brian Nomi for Defendant and Appellant.

Gregory D. Totten, Ventura County District Attorney, Lisa O. Lyytikainen, Senior Deputy District Attorney, for Plaintiff and Respondent.