Filed 4/7/16  P. v. Anaya CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE et al., | 2d Civil No. B260642 |
| Plaintiffs and Respondents, | (Super. Ct. No. 1379826) |
|  | (Santa Barbara County) |
| v. |  |
| FRANCISCO ANAYA et al., |  |
| Defendants and Appellants. |  |

Francisco Anaya, Augustin Cruz, Jr., and Marical Garcia appeal an order denying their respective motions for attorney fees. They had been defendants in an action filed by the People of the State of California ("People") and the City of Santa Barbara ("City") for a gang injunction to abate a public nuisance against criminal street gangs Eastside and Westside and their members. (Civ. Code, §§ 3479, 3480.) The trial court denied injunctive relief because defendants did not satisfy the requirements for attorney fees under Code of Civil Procedure section 1021.5.[1] We affirm.

### FACTS

In a prior action, the People and the City filed a complaint for injunctive relief "to abate a public nuisance" against two criminal street gangs--Eastside and Westside, and 30 individual defendants as gang members. Plaintiffs alleged that Anaya and Cruz were Eastside gang members who had been arrested "for gang related crimes,"

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

and that Garcia was a Westside gang member who had been arrested for "gang related crimes." Plaintiffs alleged that "Proposed Safety Zones" should be established in the City because the "Eastside and Westside gangs, through their members . . . have created a public nuisance by engaging in gang warfare consisting of criminal and nuisance activities."

The trial court entered the defaults of three individual defendants and dismissed 16 individual defendants before trial. At the time of trial, there were 11 remaining individual defendants. The court found that 10 of them were gang members, but that "Anaya [was] not currently a gang member."

The trial court denied the request for a gang injunction. It found, among other things, that: 1) Eastside and Westside are "criminal street gangs"; 2) "These gangs commit many crimes. Both felonies and misdemeanors are committed by gang members, a significant number of which are drug related. Some of these crimes are violent and assaultive in nature"; 3) "There have been gang related murders in Santa Barbara, albeit not in significant numbers"; 4) "The court agrees that this is troubling criminal activity that requires focused attention from law enforcement (which it definitely and properly receives in Santa Barbara)"; 5) "There is gang activity in Santa Barbara and it is a nuisance. But it is not a public nuisance subject to injunction under the law."

In remarking on the evidence plaintiffs presented, the trial court said a detective made "generally conclusive statements concerning effectiveness of an injunction." The detective's "expert analysis" did not "take into consideration the bigger picture of criminal activity in the Santa Barbara area, in defining the scope of the gang activity." "The complied data" that plaintiffs relied on was "incomplete." "There was very little well supported evidence of impact on the community or community buy-in to an injunction program." "Plaintiffs did not introduce evidence sufficient to show the relationship between overall crime and purportedly gang related crime."

The trial court said, "Santa Barbara is not a community beset by substantial and unreasonable gang related interference with the comfortable enjoyment of life or property by an entire community or neighborhood, or any considerable number of

2.

persons."  "There is no evidence that residents of the proposed Safety Zones in Santa Barbara are prisoners in their own homes, remain indoors at night, prevent their children from playing outside, or whose relatives and friends refuse to visit."

Defendants Anaya, Cruz and Garcia filed motions for attorney fees under section 1021.5.  The trial court denied the motions.  It found that defendants did not satisfy the requirement of section 1021.5.[2]

## DISCUSSION

### *Entitlement to Attorney Fees Under Section 1021.5*

"Eligibility for section 1021.5 . . . attorney fees is established when '(1) plaintiffs' action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate."'" (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 951-952, fn. omitted; *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 935.)

In most cases, section 1021.5 fees are awarded to plaintiffs.  But in some cases, defendants have been awarded section 1021.5 fees where their "litigation helped to preserve" a "fundamental right" which "conferred a benefit on the general public." (*County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 867.)

"The moving party bears '[t]he burden [of] establish[ing] each prerequisite to an award of attorney fees under section 1021.5.'" (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1365.)  The failure to prove any prerequisite precludes a fee award. (*Ibid.*)

### *Enforcement of an Important Right Affecting the Public Interest*

Defendants contend they met the first section 1021.5 requirement because their defense to this action enforced important rights affecting the public interest.  They

---

[2] We grant respondent's request to augment the record which was filed on December 3, 2015.

claim public nuisance "gang injunctions, by design, restrict important rights of those who are subject to them."

"In the public nuisance context, the community's right to security and protection must be reconciled with the individual's right to expressive and associative freedom." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1102.) Important constitutional issues impacting the rights of those subject to injunctions may arise in gang injunction cases. (*People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 47.) But a defendant's victory in a gang injunction case does not automatically give rise to a right to attorney fees under section 1021.5. Whether defendants litigated or enforced important rights in this case is a factual issue.

"It is the duty of the trial court, exercising 'its traditional equitable discretion . . . [to] realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right . . . .'" (*Bui v. Nguyen*, *supra*, 230 Cal.App.4th at p. 1366.) Its decision will not be reversed on appeal unless the record establishes that there is no reasonable basis for it. (*Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1567.)

Defendants have produced only a small portion of the reporter's transcripts of the trial. The clerk's transcript does not contain defendants' pleadings. Because the record is not complete, we must defer to many of the trial court's factual findings. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .'" (*Ibid.*)

The trial court found no evidence to support defendants' claims that they had enforced or litigated several important issues in the public interest.

*Enforcing Issues of Public Interest for the City*

The trial court noted that defendants had claimed that their litigation "saved Santa Barbara from being stigmatized as a city with a severe gang problem and an 'urban war zone' impacting property values and tourism." But it found there was "no evidence"

4.

to support these claims. It said there also was no proof that had the court enjoined gang activity that it would have "impacted property values and tourism."

Defendants had the burden to present evidence to support their section 1021.5 fee claim. (*Bui v. Nguyen*, *supra*, 230 Cal.App.4th at p. 1365.) But they presented no evidence at the hearing on the attorney fee motion. The trial court found "these issues were not litigated." It said that because plaintiffs "had not sustained their burden to demonstrate a public nuisance, the court was not addressing these issues." Consequently, there was no proof regarding this alleged impact of the litigation. Moreover, the court also found the gangs' activities constituted a "nuisance" to the community--a finding that does not enhance property values or the City's reputation.

*Enforcing Constitutional Rights of Travel, Speech and Due Process*

Defendants claim they enforced important rights because aspects of the proposed injunction would have "abridged constitutional rights--such as travel and speech." They further claim the trial court's statement of decision on the denial of injunctive relief shows it ruled this injunction violated "due process" and "their rights as citizens." We disagree.

The trial court said, "*A gang injunction stands to the side of the criminal statutes that subject certain behavior to significant consequences like fines and incarceration.* The court is asked to make certain persons subject to criminal or quasi-criminal consequences for matters that no legislative body has deemed to be criminal. It abridges certain guarantees of *due process. Injunctions, in the civil law, are approached very carefully.* Such orders are able to reach in and re-order the conduct of people's lives in ways that have a significant impact on their autonomy and *their rights as citizens. So the court considers very carefully what criteria must be satisfied to support such an order.*" (Italics added)

The trial court's remarks about due process and the rights of citizens were only part of a general preliminary discussion about the potential impact of gang injunctions and the reason why a court must carefully review the criteria before issuing one. Given the incomplete record, deference must be given to the court's factual finding

5.

about what was litigated. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.) The mere reference to a constitutional issue in a statement of decision does not establish entitlement to section 1021.5 fees. (*Family Planning Specialists Medical Group, Inc. v. Powers*, *supra*, 39 Cal.App.4th at p. 1570; *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 738.) The decision on such an issue must be the result of the litigation efforts of the party seeking fees. (*Leiserson*, at p. 738.)

Defendants rely on *County of San Luis Obispo v. Abalone Alliance*, *supra*, 178 Cal.App.3d 848. There, environmental activists who were protesting a nuclear power plant were prevailing defendants and they received section 1021.5 attorney fees. Their attorney fee award was affirmed because the *trial court found* "that defendants' litigation helped to preserve the fundamental right of protest." (*Abalone Alliance*, at p. 867.) In *Abalone Alliance*, there was no factual dispute about what had been litigated.

*Protecting Juveniles in the Community*

At the hearing on their motion, defendants claimed their litigation efforts advanced a valuable public goal because they prevented the People from seeking to apply the gang injunction to juveniles in the community. A party making such a claim for section 1021.5 fees must show their litigation changed the conduct of their adversaries. (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 811.) But defendants presented no evidence on this issue at the hearing.

Counsel for the People and the City denied that they ever had any "intention of including juveniles in the injunction proceedings." A document in the record supports this claim. Plaintiffs' proposed injunction sought to only restrain "Designated *adult* Eastside Gang Members" and "Designated *adult* Westside Gang Members." (Italics added.) Defendants have not shown error. (*Bui v. Nguyen*, *supra*, 230 Cal.App.3d at p. 1365.)

*Litigation as a Catalyst Under Section 1021.5*

At the hearing, defendants' counsel claimed their litigation was the "catalyst" that caused the trial court to deny the injunction. But to prevail on this ground, defendants must prove "a causal connection between" their litigation "and the relief

6.

achieved."  (*Californians For Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 966-967.)  Whether the denial of the injunction was a result of the defense efforts or other reasons was a "question of fact" for the trial court.  (*Id.* at p. 967.)  But the court rejected defendants' catalyst claim.  It said plaintiffs did not prevail because of their failure of proof.  It said, "Plaintiffs did not introduce evidence sufficient to show the relationship between overall crime and purportedly gang related crime."

Defendants contend that had plaintiffs prevailed at trial their proposed injunction would have gone into effect and it would have contained 10 restrictions on their "lawful activities."  But there is no right to section 1021.5 fees merely because one successfully avoids an injunctive relief order.  (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167.)  Here defendants did not present evidence with their section 1021.5 motion to show that:  1) these 10 claims were ever litigated, or resolved in their favor or 2) their litigation was the catalyst which prevented the implementation of unlawful restrictions involving the public interest.  They have not shown the evidence necessary to establish the causal connection required for section 1021.5 fees.  (*Californians For Responsible Toxics Management v. Kizer*, *supra*, 211 Cal.App.3d at pp. 966-967.)

*Group Associational Rights*

The trial court found defendants did not enforce a valid group "associational" right in this action.  There are two constitutionally protected group associational rights.  The first involves personal associations such as with family, children and relatives.  (*People ex rel. Gallo v. Acuna*, *supra*, 14 Cal.4th at p. 1110.)  The second "is composed of groups whose members join together for the purpose of pursuing 'a wide variety of political, social, economic, educational, religious and cultural ends.'"  (*Id.* at pp. 1110-1111.)

Affiliations with criminal street gangs are not within these protected categories.  The gang "is not an association of individuals formed, '*for the purpose* of engaging in protected speech or religious activities.'"  (*People ex rel. Gallo v. Acuna*, *supra*, 14 Cal.4th at p. 1111.)  "Without minimizing the value of the gang to its members

7.

as a loosely structured, elective form of social association, that characteristic is in itself insufficient to command constitutional protection . . . ." (*Ibid.*)

Moreover, section 1021.5 "directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Woodland Hills Residents Assn. v. City Council*, *supra*, 23 Cal.3d at p. 935.)

The People and City claim the trial court's factual findings show the type of associational interests involved in this case do not involve rights that further any appropriate public interest under section 1021.5. The trial court found Westside and Eastside are "criminal street gangs." They "commit many crimes." "There have been gang related murders." The court said, "[T]his is *troubling criminal activity that requires focused attention from law enforcement* . . . ." (Italics added.) It said that 10 of the 11 individual defendants in this case are "gang members." The court declined to issue an injunction, but found this gang activity "is a nuisance." It could reasonably find that associational rights with these gangs are not protected rights furthering any public interest when they constitute a nuisance to the community. (*People ex rel. Gallo v. Acuna*, *supra*, 14 Cal.4th at p. 1111.)

The goal of section 1021.5 is "to impose public interest attorney fees on parties that have done something to adversely affect the public interest." (*Adoption of Joshua S.*, *supra*, 42 Cal.4th at p. 954.) Here the trial court found the People's efforts to pursue gang activity is a "quest" which "was and is appropriate." There may be certain cultural or other affiliations which may be identified and protected by those who provide a defense in gang injunction cases. But here defendants did not present evidence with their section 1021.5 motion to specifically identify such affiliations and show how their litigation advanced a public interest.

Moreover, even had the trial court found defendants had litigated constitutional or other important issues, that, by itself, is not sufficient for an award of section 1021.5 fees. (*Family Planning Specialists Medical Group, Inc. v. Powers*, *supra*, 39 Cal.App.4th at p. 1570.)

8.

*Significant Benefit for the General Public or a Large Group of People*

Defendants claim they conferred a benefit for a large class of persons.

A party seeking attorney fees under section 1021.5 must prove their litigation resulted in a significant benefit to the public or a large group of people. (*Adoption of Joshua S.*, *supra*, 42 Cal.4th at pp. 951-952; *Woodland Hills Residents Assn. Inc. v. City Council*, *supra*, 23 Cal.3d at p. 935.) "Speculative assertions" will not suffice. (*Angelheart v. City of Burbank* (1991) 232 Cal.App.3d 460, 469.)

The trial court noted that defendants claimed "they vindicated the rights of 300 named and unnamed individuals and all youthful Latinos who were protected from unjustified intrusions into their liberty interests." But the People and City denied that they targeted Latinos, and their proposed injunction was limited to targeting identified adult gang members from the two gangs. The court said there were only "about 30 significantly active members in each gang at a time" and "[o]nly 30 individuals were directly spared any effect of the injunction." It said, "It is speculative to say anyone else benefitted from the decision." Consequently, it rejected defendants' claims about the impact of the litigation and found that at the time of trial there were only 11 individual defendants.

Defendants challenge these factual findings. But the incomplete appellate record does not provide an adequate foundation to support their challenges. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.)

Moreover, here there was no published decision that could benefit the general public. Nor was there any judgment that could be enforced in the future by individuals who were not parties to this action. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 636.) Defendants did not file an injunctive relief action on behalf of a class or group of people. They did not obtain "a ringing declaration of the rights" of others or force their adversaries to change their policies. (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 167; *Family Planning Specialists Medical Group, Inc. v. Powers*, *supra*, 39 Cal.App.4th at p. 1569.) They did not prevent law enforcement from targeting gang activities. Instead, the trial court found

9.

plaintiffs proved these gangs are properly subject to the "focused attention from law enforcement."  By prevailing, defendants furthered their individual interests, but they did not show their litigation involved a broad beneficial impact to others.  (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 167.)

## DISPOSITION

The order denying attorney fees is affirmed.  Each party shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.


10.

Colleen Sterne, Judge

Superior Court County of Santa Barbara

_____

David Andreasen for Defendants and Appellants.

Ariel Pierre Calonne, City Attorney, Tom R. Shapiro, Assistant City Attorney, Robin L. Lewis, Assistant City Attorney, City of Santa Barbara; Joyce Dudley, District Attorney, Marguerite Clipper Charles, Deputy District Attorney, Santa Barbara County District.